**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| RICMIC, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 26-CV-578 |
| v. | ) | |
| | ) | |
| JNL TECHNOLOGIES, INC. | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff RICMIC, LLC ("RICMIC" or "Plaintiff") files this Complaint for Patent Infringement against Defendant JNL Technologies, Inc. ("JNL" or "Defendant") and states as follows:

### THE PARTIES

**1.** Plaintiff RICMIC, LLC is a limited liability company organized and existing under the laws of the State of Oregon, having its principal place of business in Oregon. RICMIC is the owner of the patents asserted herein and all claims for damages and infringement of each of the patents asserted. Plaintiff incorporates by reference each Exhibit referenced herein.

**2.** On information and belief, Defendant JNL Technologies, Inc. is a corporation organized and existing under the laws of the state of Wisconsin, having a place of business at W1205 Industrial Dr., Ixonia, Wisconsin 53036. Defendant's registered agent is Lori Raabe, W1205 Industrial Dr., Ixonia, WI 53036.

1

## JURISDICTION AND VENUE

3.     This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code. This action seeks damages and other relief arising out of infringement by Defendant of U.S. Patent No. 9,305,450 B2 ("the '450 patent"), U.S. Patent No. 10,311,707 ("the '707 patent"), and U.S. Patent No. 10,380,873 B1 ("the '873 patent") (collectively, the "Asserted Patents"), which disclose an "Interactive Wireless Life Safety Communications System."

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because the claims arise under the patent laws of the United States, 35 U.S.C. §§ 1, et seq.

5.     This Court has personal jurisdiction over Defendant because, on information and belief, it conducts continuous and systematic business in the state of Wisconsin, including this judicial district.  Defendant conducts continuous and systematic business in the state of Wisconsin including by making, using, selling, servicing and encouraging third parties to use systems and components accused of infringement in this case within this judicial district, and has committed acts of patent infringement in this judicial district and elsewhere, including but not limited to making, using, selling and/or offering to sell systems and/or components, and/or performing methods, that infringe the asserted patents directly and/or indirectly, which acts form a substantial part of the events giving rise to this action.  Further, Defendant induces its customers' use of, and/or contributes to its customers' use of

the infringing products and systems at issue in this case and performance of one or more patented methods of the Asserted Patents in this judicial district.

6.     Venue is proper within this judicial district at least under 28 U.S.C. § 1391(b), (c) and (d), and/or § 1400(b) because Defendant resides and/or has an established place of business in the state of Wisconsin and this judicial district.

## BACKGROUND

7.     The "Interactive Wireless Life Safety Communications System" technology described in the Asserted Patents generally discloses a new, useful, and improved emergency call communication system among residents (via resident associated alerting devices), caregivers and administrators, typically deployed in an assisted living or memory care facility—and commonly referred to as "emergency call, nurse call" systems.

8.     One embodiment of the invention comprises a network of resident life safety  "alerting" devices (such as pendants, pull cords, smoke alarms, and door sensors) connected to a central communications server over a first communications network, and caregiver devices (such as tablets or smart phones) having an interactive mobile app connected to the central server over a different, second communications network, whereby alarm signals originating at resident alerting devices in response to detection of alarm conditions are received by the central server, recorded and broadcasted by the central server as alarm notifications to specific caregiver devices with information about the alarm condition and variably about the resident.

9. The invention enables caregivers to respond to the alarm notifications via an "action status response" (e.g., selecting "Responding Now") and to communicate with other caregivers, residents, and administrators via the central server, thereby providing feedback and alert response status updates to administrators and other caregivers, and also enables coordinated caregiver response to the emergency alert, resulting in enhanced resident safety, all of which are improvements over existing nurse call systems that lack the above-described interaction, information exchange and bi-directional communication described in Plaintiff's inventions.

10. The patented inventions provide substantial information delivery benefits, logging, recording, and reporting functionality, and overcomes other functional and technical limitations inherent in one-way pager, two-way radio and cellular phone "nurse call" alert systems used in assisted living facilities.

11. On April 5, 2016, the '450 patent, titled "Interactive Wireless Life Safety Communications System," was duly and lawfully issued by the United States Patent and Trademark Office ("USPTO"). The entire right, title, and interest in and to the '450 patent, including all rights to past damages, has been assigned to Plaintiff RICMIC, LLC. A true and correct copy of the '450 patent is attached to this complaint as Exhibit A.

12. On June 4, 2019, the '707 patent, titled "Interactive Wireless Life Safety Communications System," was duly and lawfully issued by the United States Patent and Trademark Office ("USPTO"). The entire right, title, and interest in and to the '707 patent, including all rights to past damages, has been assigned to Plaintiff

4

RICMIC, LLC. A true and correct copy of the '707 patent is attached to this complaint as Exhibit B.

13.    On August 13, 2019, the '873 patent, titled "Interactive Wireless Life Safety Communications System," was duly and lawfully issued by the United States Patent and Trademark Office ("USPTO"). The entire right, title, and interest in and to the '873 patent, including all rights to past damages, has been assigned to Plaintiff RICMIC, LLC. A true and correct copy of the '873 patent is attached to this complaint as Exhibit C.

14.    RICMIC and its licensees complied with the requirements of 35 U.S.C. § 287(a), including by affixing the word "patent" or the abbreviation "pat." together with the number of the patent on apparatuses manufactured or sold by RICMIC and its licensees that practice the patented inventions disclosed by the Asserted Patents and/or Defendant has actual notice of one or more of the Asserted Patents since at least as early as April 22, 2026.

15.    Defendant, and/or its parent, divisions, subsidiaries, officers, directors, managers, and/or agents engaged in the business of importing, making, using, offering for sale, and/or selling emergency call systems that employ an interactive mobile app alert notification supplied by Defendant which embody the patented inventions disclosed and claimed in the Asserted Patents as further described herein and the attachments to this complaint.  Defendant has provided design and planning services, training, and oversees the installation of the systems accused of infringement. *See* https://jnltech.net/.  A preliminary identification of these systems include without

limitation Defendant's "Nurse Call System" or platform configured to operate with JNL's Quantum mobile app, whether referred to as "Quantum," "Quantum Senior Safety and Security," "Quantum Unified Monitoring," "Quantum Nurse Call" (or "Wireless Nurse Call), and/or "Quantum Mobile Alerting and Management." *See* for example, the systems described at https://jnltech.net/. These systems utilize a variety of wireless and hardwired devices, such as nurse call devices and/or pendants. This platform is configured to operate with the Quantum app (also known as "Quantum Mobile") (that operates on communication devices such as Android mobile devices), and when used with the Quantum app, provides wireless nurse call and emergency response systems that are interactive through caregiver input. Collectively these systems may be referred to as the "Accused Systems."

16.     Defendant promotes the Accused Systems for use in the senior housing market.

17.     Defendant promotes the Accused Systems as an "advanced wireless nurse call system" that "allows assisted living communities to experience next-level features." As an example of Defendant's promotion and encouragement for the use of the Accused Systems, Defendant issued a news release on March 12, 2026 entitled "How Nurse Call Technology Can Improve Assisted Living Staffing" which included the following:



18.    Defendant's Accused Systems include capability to "Claim" an alert via the Quantum app.  Defendant encourages its customers and caregivers using the Accused Systems to "claim" the alerts to improve caregiver efficiency and eliminate redundancy.  Defendant's Accused Systems include capability to decline an alert that was previously claimed.

19.    Defendant offers its customers, such as senior living facilities (and their employees), the aforementioned mobile app with functionality to operate as a component of the Accused Systems.

20.    On information and belief, Defendant's customers are instructed to go through a process to set up and/or login to the Quantum app and/or Accused Systems to provide care to residents at customer facilities which establishes the manner of a

customer's use of the app and Accused Systems. Defendant provides its customers with additional instructions and information that encourage customers to use, and how to use, the Accused Systems. As a result of the nature of the communications between a customer's (including their employee's) devices with the Quantum app and Defendant's systems, Defendant establishes the manner and timing of the use of the Accused System and methods of use of the Accused Systems.

21. Plaintiff will rely on a reasonable opportunity for discovery of information regarding reasonably similar systems that Defendant makes, uses, sells, offers for sale and/or imports in the U.S and additional information that is provided to its customers or prospective customers.

## COUNT I - PATENT INFRINGEMENT
### (Infringement of the '450 Patent)

22. Plaintiff repeats and re-alleges each and every allegation of paragraphs 1 through 21 as though fully set forth in this paragraph.

23. This cause of action arises under the patent laws of the United States and, in particular, under 35 U.S.C. §§ 271, *et seq*.

24. Plaintiff is the owner by assignment of the '450 patent with sole rights to enforce the '450 patent and sue infringers.

25. The '450 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

26. Defendant provides interactive wireless life safety communication systems, such as emergency call systems, to the senior living and healthcare markets

and industries. Defendant makes, uses, sells, imports, and/or offers to sell, and otherwise markets, designs, recommends, maintains and/or services the Accused Systems.

27.     The Accused Systems are comprised of each of the elements of Claim 1 and other claims in the '450 patent, literally or by equivalents including resident alert transmitting devices on a first communications network connected to a central communications server, and a second wireless network different from the first communications network over which smart phone-like wireless caregiver devices are connected to a central server to effect and practice the systems and methods claimed in the '450 patent, including, for example, bi-directional communications, real time coordination of caregiver services, logging and reporting of alerts and alert notifications to designated caregivers and groups, transmitting caregiver action status and other responses to all or selected caregiver devices, transmittal of alert and resident identification and location to caregivers, progressive escalation of an alarm signal, reset of the alert transmitting devices, and text communications as claimed in the '450 patent, all of which are significant improvements over and exceed the capabilities of nurse call systems based on one-way pagers, two-way radios and cellphones used in nurse call systems that do not practice RICMIC's invention as disclosed in the Asserted Patents.

28.     Among the improvements over prior art are that the '450 Patent: (1) solves the problem of knowing which caregiver, if any, is responding to and/or declining an alarm signal; (2) prevents "alarm fatigue" among caregivers and ensures

attention to the alarm condition, thereby enhancing resident safety; (3) provides substantially more information to caregivers about resident safety conditions; (4) improves interactivity between alert events and caregiver responses; (5) improves interactivity between administrators, managers, caregiver and service staff; (6) avoids technological limitations presented by prior art systems such as interference with life-critical equipment, unreliable network coverage, limited audio fidelity, disruptive volume levels and unintentional disclosure of confidential information; and (7) avoids wasting personnel resources by multiple staff needlessly responding to alarm signals.

29.    Exhibit D to this Complaint describes a non-limiting example of Defendant's and its customer's infringement of Claim 1 of the '450 patent, based on plaintiff RICMIC's current information and belief. RICMIC makes this preliminary and exemplary identification of infringement without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its contentions based on additional information obtained through discovery or otherwise, pursuant to the Federal Rules of Civil Procedure, to this Court's local rules and any applicable local patent rules and procedures, and/or as is otherwise appropriate.  RICMIC incorporates the factual assertions related to each limitation of claim 1 in Exhibit D as set forth herein, and pursuant to Rule 8(b) of the Federal Rules of Civil Procedure, Defendant is to admit or deny each allegation set forth in Exhibit D.

30.    Defendant's making, selling, offering for sale, importing, and/or use of the Accused Systems, literally and/or through the doctrine of equivalents, infringes at

least Claims 1-3, 7, 10, 11-18 of the '450 patent under 35 U.S.C. § 271(a), and Defendant will continue to infringe unless enjoined by this Court.

31.    Defendant, through its agents, employees and/or servants, either alone or in conjunction with others, has infringed and continue to infringe literally and/or under the doctrine of equivalents at least Claims 1-3, 7, 10, 11-18 of the '450 patent by making, selling, offering to sell, importing, and/or using the Accused Systems covered by the '450 patent.

32.    Defendant, either alone or in conjunction with others, infringes, directly and/or indirectly (inducing infringement and/or contributing to infringement), at least Claims 1-3, 7, 10, 11-18 of the '450 patent by making, using, selling, importing, and/or offering to sell and/or causing others to make and/or use in this judicial district and/or elsewhere in the United States, the Accused Systems that in use are covered by such claims of the '450 patent.

33.    Defendant's customers use Defendant's Accused Systems and are instructed and/or encouraged by Defendant to use such Accused Systems that infringe at least Claims 1-3, 7, 10, 11-18 of the '450 patent.

34.    Defendant provides and will continue to provide encouragement and/or instructions, such as a system, components and/or an app, instructions (including information and instructions requiring login credentials and/or to submit contact information to Defendant's systems and/or website(s)) and/or services, that encourage and/or instruct their customers to use, and use in the future, the Accused Systems in an infringing manner, specifically intending such customers will operate

the Accused Systems in such a manner, and knowing of such actions, which constitutes infringement of one or more claims of the '450 patent.

35.    Defendant indirectly infringes one or more claims of the '450 patent in violation of 35 U.S.C. § 271(b) by inducing its customers to use the Accused Systems to directly infringe one or more claims of the '450 patent in accordance with Defendant's encouragement and/or instructions.

36.    For example, Defendant induces direct infringement of the '450 patent by encouraging and instructing customers for the Accused Systems via Defendant's app, instructions, training, planning and/or trouble shooting services, that encourage and/or instruct customers to use the Accused Systems such that, by following Defendant's encouragement and/or instructions, Defendant's customers directly infringe one or more claims of the '450 patent.  Defendant engages in such inducement knowingly and, at least since April 22, 2026 has had knowledge that such activity encourages and/or instructs customers of its Accused Systems to directly infringe the '450 patent.

37.    Defendant indirectly infringes at least Claims 1-3, 7, 10, 11-18 of the '450 patent in violation of 35 U.S.C. § 271(c) as a contributory infringer by selling, offering to sell, directly or indirectly, and/or importing into the United States one or more components of the Accused Systems with knowledge of the '450 patent since at least since April 22, 2026 and knowledge that the Accused Systems, including such components, as used is an infringement of the '450 patent claims, and knowing that such components of the Accused Systems are especially made or especially adapted

for use in an infringement and are not a staple article of commodity of commerce suitable for substantial non-infringing use. For example, the Quantum mobile app of the Accused Systems is made and/or adapted for use to interactively receive alarm notifications and transmit a response that is received by the central server and other caregivers in an infringing manner and has no substantial non-infringing use.

38. Defendant has infringed the '450 patent without permission or license from Plaintiff and continues to infringe the '450 patent in violation of 35 U.S.C. § 271.

39. Defendant's acts of infringement have caused damage to Plaintiff, and Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial.

40. Defendant's infringement and/or continued infringement of the '450 patent is willful, and Plaintiff is accordingly entitled to enhanced damages pursuant to 35 U.S.C. § 284.

41. This is an exceptional case such that Defendant should be required to pay Plaintiff's reasonable attorneys' fees in accordance with 35 U.S.C. § 285.

42. Defendant's continuing infringement has caused and will continue to cause Plaintiff irreparable harm for which there is no adequate legal remedy because without an injunction RICMIC is unable to exercise its fundamental right to exclude others from practicing the Asserted Patents. These infringing acts have caused and will continue to cause immediate and irreparable harm for which there is no adequate remedy at law. Plaintiff is entitled to an injunction to prevent further infringement pursuant to 35 U.S.C. § 283.

## COUNT II - PATENT INFRINGEMENT
### (Infringement of the '707 Patent)

43.    Plaintiff repeats and re-alleges each and every allegation of paragraphs 1 through 42 as though fully set forth in this paragraph.

44.    This cause of action arises under the patent laws of the United States and, in particular, under 35 U.S.C. §§ 271, *et seq*.

45.    Plaintiff is the owner by assignment of the '707 patent with sole rights to enforce the '707 patent and sue infringers.

46.    The '707 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

47.    The Accused Systems are comprised of each of the elements of Claim 1 and other claims in the '707 patent, literally or by equivalents, including resident alert transmitting devices on a first communications network connected to a central communications server, and a second wireless network different from the first communications network over which smart phone-like wireless caregiver devices are connected to the central server to effect and practice the systems and methods claimed in the '707 patent; including, for example, bi-directional communications, real time coordination of caregiver services including a caregiver selectable response to and acceptance of responsibility for an active alert, logging and reporting of alerts and alert notifications to all designated caregivers and groups, transmitting caregiver action status and other responses to all or selected caregiver devices, transmittal of alert and

14

resident information, escalation of an alarm signal, reset of the alert transmitting device, and text and/or voice communications as claimed in the '707 patent, all of which are significant improvements over and exceed the capabilities of nurse call systems based on one-way pagers, two-way radios and cellphones used in nurse call systems that do not practice RICMIC's invention as disclosed in the Asserted Patents.

48.    Among improvements over prior art are that the '707 Patent: (1) solves the  problem of knowing which caregiver, if any, is responding to and/or declining an alarm signal; (2)  prevents "alarm fatigue" among caregivers and ensures attention to the alarm condition, thereby enhancing resident safety; (3) provides substantially more information to caregivers about resident safety conditions; (4) improves interactivity between alert events and caregiver responses; (5) improves interactivity between administrators, managers, caregiver and service staff; (6) avoids technological limitations presented by prior art systems such as interference with life-critical equipment, unreliable network coverage, limited audio fidelity, disruptive volume levels and unintentional disclosure of confidential information; and (7) avoids wasting personnel resources by multiple staff needlessly responding to alarm signals.

49.    Exhibit E to this Complaint describes a non-limiting example of Defendant's  infringement of Claim 1 of the '707 Patent, based on plaintiff RICMIC's current information and belief. RICMIC makes this preliminary and exemplary identification of infringement without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its contentions based on additional information obtained through discovery or otherwise,

15

pursuant to the Federal Rules of Civil Procedure, to this Court's local rules and any applicable local patent rules and procedures, and/or as is otherwise appropriate. RICMIC incorporates the factual assertions related to each limitation of claim 1 in Exhibit E as set forth herein, and pursuant to Rule 8(b) of the Federal Rules of Civil Procedure, Defendant is to admit or deny each allegation set forth in Exhibit E.

50.    Defendant's import, making, sales and use of the Accused Systems as alleged literally and/or through the doctrine of equivalents, infringes at least Claims 1-5, 7, 9, and/or 11-20 embodied in the '707 patent under 35 U.S.C. § 271(a), and Defendant will continue to infringe unless enjoined by this Court.

51.    Defendant, through its agents, employees and/or servants, either alone or in conjunction with others, has infringed and will continue to infringe literally and/or under the doctrine of equivalents one or more claims, including at least Claims 1-5, 7, 9, and/or 11-20 of the '707 patent by making, selling, offering to sell, and using the Accused Systems covered by the '707 patent.

52.    On information and belief, Defendant, either alone or in conjunction with others, infringes, directly and/or indirectly (inducing infringement and/or contributing to infringement), at least Claims 1-5, 7, 9, and/or 11-20 of the '707 patent by making, using, selling, and/or offering to sell and/or causing others to make and/or use in this judicial district and/or elsewhere in the United States, the Accused Systems that in use are covered by such claims of the '707 patent.

53. On information and belief, Defendant's customers use Defendant's Accused Systems and are instructed and/or encouraged by Defendant to use such Accused Systems that infringe at least Claims 1-5, 7, 9, and/or 11-20 of the '707 patent.

54. On information and belief, Defendant provides and will continue to provide encouragement and/or instructions, such as a system, components and/or an app, installation, instructions (including information and instructions requiring login in credentials to Defendant's website(s)) and/or services, that encourage and/or instruct their customers to use, and use in the future, the Accused Systems in an infringing manner, specifically intending such customers will operate the Accused Systems in such a manner, and knowing of such actions, which constitutes infringement of one or more claims of the '707 patent.

55. On information and belief, Defendant indirectly infringes one or more claims of the '707 patent in violation of 35 U.S.C. § 271(b) by inducing their customers to use the Accused Systems to directly infringe one or more claims of the '707 patent in accordance with Defendant's encouragement and/or instructions.

56. For example, on information and belief, Defendant induces direct infringement of the '707 patent by encouraging and instructing customers for the Accused Systems via Defendant's app, installation, instructions and/or trouble shooting services, that encourage and/or instruct customers to use the Accused Systems such that, by following Defendant's encouragement and/or instructions, Defendant's customers directly infringe one or more claims of the '707 patent. Defendants engage in such inducement knowingly and, at least as early as the filing

17

and service of the complaint, have done so with knowledge that such activity encourages and/or instructs customers of their Accused Systems to directly infringe the '707 patent.

57.    Defendant indirectly infringes at least Claim 1-5, 7, 9, and/or 11-20 of the '707 patent in violation of 35 U.S.C. § 271(c) as a contributory infringer by selling, offering to sell, directly or indirectly, and/or importing into the United States one or more components of the Accused Systems with knowledge of the '707 patent, at least as early as the filing and service of the complaint, and knowledge that the Accused Systems, including such components, as used is an infringement of the '707 patent claims, and knowing that such components of the Accused Systems are especially made or especially adapted for use in an infringement and are not  a staple article of commodity of commerce suitable for substantial non-infringing use.  For example, the Quantum mobile app of the Accused Systems is made and/or adapted for use to interactively receive alarm notifications and transmit a response that is received by the central server and other caregivers in an infringing manner and has no substantial non-infringing use.

58.    Defendant has infringed the '707 patent without permission or license from Plaintiff and continues to infringe the '707 patent in violation of 35 U.S.C. § 271. Defendant is liable for infringement of the '707 patent pursuant to 35 U.S.C. § 271.

59.    Defendant's acts of infringement have caused damage to Plaintiff, and Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial.

60. Defendant's infringement of the '707 patent is willful, and Plaintiff is accordingly entitled to enhanced damages pursuant to 35 U.S.C. § 284.

61. This is an exceptional case such that Defendant should be required to pay Plaintiff's reasonable attorneys' fees in accordance with 35 U.S.C. § 285.

62. Defendant's continuing infringement has caused and will continue to cause Plaintiff irreparable harm for which there is no adequate legal remedy because without an injunction RICMIC is unable to exercise its fundamental right to exclude others from practicing the Asserted Patents. These infringing acts have caused and will continue to cause immediate and irreparable harm for which there is no adequate remedy at law. Plaintiff is entitled to an injunction to prevent further infringement pursuant to 35 U.S.C. § 283.

## COUNT III - PATENT INFRINGEMENT
### (Infringement of the '873 Patent)

63. Plaintiff repeats and re-alleges each and every allegation of paragraphs 1 through 62 as though fully set forth in this paragraph.

64. This cause of action arises under the patent laws of the United States and, in particular, under 35 U.S.C. §§ 271, *et seq*.

65. Plaintiff is the owner by assignment of the '873 patent with sole rights to enforce the '873 patent and sue infringers.

66. The '873 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

19

**67.** Defendant provides interactive wireless life safety communication systems, such as emergency call systems, to the senior living and healthcare markets and industries. Defendant makes, uses, sells, imports, and/or offers to sell, and otherwise markets, designs, recommends, maintains and services the Accused Systems.

**68.** The Accused Systems are comprised of each of the elements of Claim 1 and other claims in the '873 patent, literally or by equivalents, including resident alert transmitting devices on a first communications network connected to a central communications server, and a second wireless network different from the first communications network over which smart phone-like wireless caregiver devices are connected to the central server to effect and practice the systems and methods claimed in the '873 patent; including, for example, bi-directional communications, real time coordination of caregiver services including a caregiver selectable response to and acceptance of responsibility for an active alert, logging and reporting of alerts and alert notifications to all designated caregivers and groups, transmitting caregiver action status and other responses to all or selected caregiver devices, transmittal of alert and resident information, escalation of an alarm signal, reset of the alert transmitting device, and text communications as claimed in the '873 patent, all of which are significant improvements over and exceed the capabilities of nurse call systems based on one-way pagers, two-way radios and cellphones used in nurse call systems that do not practice RICMIC's invention as disclosed in the Asserted Patents.

69.     Among improvements over prior art are that the '873 Patent: (1) solves the problem of knowing which caregiver, if any, is responding to and/or declining an alarm signal; (2) prevents "alarm fatigue" among caregivers and ensures attention to the alarm condition, thereby enhancing resident safety; (3) provides substantially more information to caregivers about resident safety conditions; (4) improves interactivity between alert events and caregiver responses; (5) improves interactivity between administrators, managers, caregiver and service staff; (6) avoids technological limitations presented by prior art systems such as interference with life-critical equipment, unreliable network coverage, limited audio fidelity, disruptive volume levels   and unintentional disclosure of confidential information; and (7) avoids wasting personnel resources by multiple staff needlessly responding to alarm signals.

70.     Exhibit F to this Complaint describes a non-limiting example of Defendant's  and its customer's infringement of Claim 1 of the '873 Patent, based on plaintiff RICMIC's current information and belief. RICMIC makes this preliminary and exemplary identification of infringement without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its contentions based on additional information obtained through discovery or otherwise, pursuant to the Federal Rules of Civil Procedure, to this Court's local rules and any applicable local patent rules and procedures, and/or as is otherwise appropriate.  RICMIC incorporates the factual assertions related to each limitation of Claim 1 in Exhibit F as set forth herein, and pursuant to Rule 8(b) of the Federal Rules

of Civil Procedure, Defendant is to admit or deny each allegation set forth in Exhibit F.

71.    Defendant's making, sale, offering for sale, importing, and/or use of the Accused Systems as alleged literally and/or through the doctrine of equivalents, infringes at least Claims 1-4, 6-7, 11, and/or 13-17 of the '873 patent under 35 U.S.C. § 271(a), and Defendant will continue to infringe unless enjoined by this Court.

72.    Defendant through its agents, employees and/or servants, either alone or in conjunction with others, have infringed and continue to infringe literally and/or under the doctrine of equivalents one or more claims, including at least Claims 1-4, 6-7, 11, and/or 13-17 of the '873 patent by making, selling, offering to sell, importing and/or using the Accused Systems covered by the '873 patent.

73.    Defendant, either alone or in conjunction with others, infringes, directly and/or indirectly (inducing infringement and/or contributing to infringement), at least Claims 1-4, 6-7, 11, and/or 13-17 of the '873 patent by making, using, selling, importing, and/or offering to sell and/or causing others to make and/or use in this judicial district and/or elsewhere in the United States, the Accused Systems that in use are covered by such claims of the '873 patent.

74.    Defendant's customers use Defendant's Accused Systems and are instructed and/or encouraged by Defendant to use such Accused Systems that infringe at least Claims 1-4, 6-7, 11, and/or 13-17 of the '873 patent.

75.    Defendant provides and will continue to provide encouragement and/or instructions, such as a system, components and/or an app, instructions (including

22

information and instructions requiring login credentials and/or to submit contact information to Defendant's systems and/or website(s)) and/or services, that encourage and/or instruct their customers to use, and use in the future, the Accused Systems in an infringing manner, specifically intending such customers will operate the Accused Systems in such a manner, and knowing of such actions, which constitutes infringement of one or more claims of the '873 patent.

76.     Defendant indirectly infringes one or more claims of the '873 patent in violation of 35 U.S.C. § 271(b) by inducing its customers to use the Accused Systems to directly infringe one or more claims of the '873 patent in accordance with Defendant's encouragement and/or instructions.

77.     For example, Defendant induces direct infringement of the '873 patent by encouraging and instructing customers for the Accused Systems via Defendant's app, instructions, training, planning and/or trouble shooting services, that encourage and/or instruct customers to use the Accused Systems such that, by following Defendant's encouragement and/or instructions, Defendant's customers directly infringe one or more claims of the '873 patent. Defendant engages in such inducement knowingly and, at least since April 22, 2026, has done so with knowledge that such activity encourages and/or instructs customers of its Accused Systems to directly infringe the '873 patent.

78.     Defendant indirectly infringes at least Claim 1-4, 6-7, 11, and/or 13-17 of the '873 patent in violation of 35 U.S.C. § 271(c) as a contributory infringer by selling, offering to sell, directly or indirectly, and/or importing into the United States

one or more components of the Accused Systems with knowledge of the '873 patent, at least since April 22, 2026, and knowledge that the Accused Systems, including such components, as used is an infringement of the '873 patent claims, and knowing that such components of the Accused Systems are especially made or especially adapted for use in an infringement and are not a staple article of commodity of commerce suitable for substantial non-infringing use. For example, the Quantum mobile app of the Accused Systems is made and/or adapted for use to interactively receive alarm notifications and transmit a response that is received by the central server and other caregivers in an infringing manner and has no substantial non-infringing use.

79.    Defendant has infringed the '873 patent without permission or license from Plaintiff and continues to infringe the '873 patent in violation of 35 U.S.C. § 271.

80.    Defendant's acts of infringement have caused damage to Plaintiff, and Plaintiff is entitled to recover from Defendant damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial.

81.    Defendant's infringement and/or continued infringement of the '873 patent is willful, and Plaintiff is accordingly entitled to enhanced damages pursuant to 35 U.S.C. § 284.

82.    This is an exceptional case such that Defendant should be required to pay Plaintiff's reasonable attorneys' fees in accordance with 35 U.S.C. § 285.

83.    Defendant's continuing infringement has caused and will continue to cause Plaintiff irreparable harm for which there is no adequate legal remedy because without an injunction RICMIC is unable to exercise its fundamental right to exclude

others from practicing the Asserted Patents. These infringing acts have caused and will continue to cause immediate and irreparable harm for which there is no adequate remedy at law. Plaintiff is entitled to an injunction to prevent further infringement pursuant to 35 U.S.C. § 283.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendant, including but not limited to, the following relief:

1.    An order adjudging Defendant to have infringed the Asserted Patents under 35 U.S.C. § 271;

2.    An injunction enjoining Defendant, its respective officers, directors, agents, servants, employees and attorneys, and those persons in active concert or participation with Defendant, from infringing each of the Asserted Patents in violation of 35 U.S.C. § 271;

3.    An order requiring Defendant to account for all gains, profits, and advantages derived by Defendant's infringement of the each of the Asserted Patents in violation of 35 U.S.C. § 271, and requiring Defendant to pay to Plaintiff all damages suffered by Plaintiff and at least a reasonable royalty;

4.    An order enhancing damages pursuant to 35 U.S.C. § 284;

5.    An order adjudging that this is an exceptional case;

6.    An award to Plaintiff of the attorneys' fees and costs incurred by Plaintiff in connection with this action pursuant to 35 U.S.C. § 285;

7.    An award of pre-judgment and post-judgment interest against Defendants; and

8.    Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all issues raised by this Complaint that are triable by jury.

Respectfully submitted,

Dated:  June 23, 2026          By:   s/ Sarah Troupis Ferguson


Sarah Troupis Ferguson
Wisconsin Bar No. 1061515
Hasen Reynolds LLC
25 West Main St. Suite 300
Madison, Wisconsin 53703
Phone: (608) 398-9090
Email: sferguson@hansenreynolds.com

John T. Polasek (*Pro Hac Vice* Forthcoming)
Texas Bar. No. 16088590
The Polasek Law Firm, PLLC
2401 Fountain View Dr., Suite 316
Houston, Texas 77057
Telephone: (832) 485-3580
Email: ted@polaseklaw.com


*Attorneys for Plaintiff, RICMIC, LLC*